**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**BRENDA WILLCUTT**                               **CIVIL ACTION NO.**

**VERSUS**                                        **19-854-BAJ-EWD**

**COMMISSIONER OF SOCIAL**
**SECURITY**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 24, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**BRENDA WILLCUTT**                               **CIVIL ACTION NO.**

**VERSUS**                                       **19-854-BAJ-EWD**

**COMMISSIONER OF SOCIAL
SECURITY**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Brenda Willcutt ("Plaintiff"), who is representing herself, brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits ("DIB").[1]  Plaintiff has filed a letter, which will be construed as her memorandum in support of appeal.[2] The Commissioner has filed an Opposition Memorandum.[3]

Based on the applicable standard of review under 42 U.S.C. § 405(g), substantial evidence supports the Commissioner's decision, and the correct legal standards were applied.  Accordingly, it is recommended that the Commissioner's decision be affirmed.

**I.   PROCEDURAL HISTORY**

On or about November 5, 2016, Plaintiff filed an application for DIB[4] alleging disability beginning November 1, 2014.[5]  At the time of the application, the Commissioner determined that

---

[1] *See* AR p. 159 (correspondence from the Commissioner forwarding Plaintiff a summary of her statements used to complete her application for DIB); and AR p. 9 (Administrative Law Judge Decision).  References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]."  References to the record of administrative proceedings filed in this case are designated by "(AR p. [page number(s)]."

[2] R. Doc. 25. Plaintiff failed to timely file her brief; therefore, on September 14, 2022, the Court issued a show cause order to Plaintiff. R. Doc. 23.  In response, Plaintiff filed a letter in support of her appeal. In light of Plaintiff's *pro se* status, the letter is construed as Plaintiff's brief. R. Doc. 26.  The record reflects that Plaintiff was counseled verbally by the Administrative Law Judge ("ALJ") and the Commissioner regarding her right to representation and to explore retention of legal representation.  AR pp. 66, 70 (explaining right to representation and postponing June 2018 hearing so that Plaintiff could obtain representation) and AR p. 284 (July 18, 2018 Report of Contact with Plaintiff regarding her right of representation and noting that a list of representatives was being mailed to Plaintiff, notwithstanding Plaintiff's statement that she did not want an attorney).

[3] R. Doc. 28.

[4] AR pp. 9, 75.

[5] AR p. 56 (testimony) and AR p. 76.

Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2016.[6] Plaintiff's claim was initially denied on February 27, 2017.[7] Plaintiff timely requested a hearing before an administrative law judge ("ALJ").[8] On June 22, 2018, Plaintiff appeared, but the hearing was postponed so she could find representation.[9] The hearing occurred on October 10, 2018, at which Plaintiff appeared *pro se*.[10] Vocational Expert ("VE") Kelly Roberts ("Roberts") testified.[11] On March 13, 2019, the ALJ issued a notice of unfavorable decision.[12] Plaintiff timely requested review by the Appeals Council.[13] On November 14, 2019, the Appeals Council denied Plaintiff's request for review.[14]

On December 10, 2019, Plaintiff filed her Complaint in this Court.[15] Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action for judicial review and the Appeals Council's decision is the Commissioner's final decision for purposes of judicial review.[16]

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is limited to two inquiries under 42 U.S.C. § 405(g): (1) whether substantial evidence exists in the record to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[17]

---

[6] AR pp. 75, 84, 161, 191. Plaintiff's earnings history is at AR pp. 160-80. The date last insured is not at issue in this appeal.
[7] AR pp. 85-88 and *see* AR pp. 75-84 (DDS Determination Explanation and Transmittal).
[8] AR p. 89.
[9] AR pp. 64-74 and *see* AR pp. 70-71.
[10] AR pp. 53-63 (transcript of hearing) and AR pp. 131, 155 (Waiver of Representation by Claimant).
[11] AR pp. 62-63 and 305 (resumé).
[12] AR pp. 6-21.
[13] AR pp. 22-23.
[14] AR pp. 1-5.
[15] R. Doc. 1.
[16] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").
[17] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

**III. PLAINTIFF'S ASSIGNMENTS OF ERROR**

In her letter brief, Plaintiff asserts that "her medical problems have gotten worse" since she filed for disability benefits in 2016. She lists six problems.[18] Two of the medical issues listed by Plaintiff fall under the severe impairment recognized by the ALJ of chronic venous insufficiency in her feet and legs (*i.e.*, #2 thrombophlebitis and chronic venous deficiency, and #6 varicose veins in both feet and legs). Three of the listed problems fall under Plaintiff's recognized severe impairment of degenerative joint disease of the bilateral feet ("DJD") (*i.e.*, #4 (DJD), #3 bone spur on left foot, and #5 deformed hammertoes on both feet).[19] The first condition listed by Plaintiff in her letter brief, hand tremors, was discussed but was not found to be a severe impairment or disabling by the ALJ.[20]

Plaintiff did not assign specific errors as to any of the ALJ's findings, however, her reference to hand tremors as a medical problem precluding her from working will be construed as assigning error to the failure of the ALJ to find the hand tremors disabling.[21] Plaintiff's allegation that she cannot work in light of her other listed medical problems, *i.e.*, venous insufficiency and DJD, will be construed as assigning error to the ALJ's determination that Plaintiff has a residual

---

[18] R. Doc. 25.
[19] AR p. 12. Plaintiff did not specifically raise osteoporosis in her letter brief, but the ALJ also found osteoporosis to be a severe impairment. *Id.*
[20] R. Doc. 25, p. 1. Attached to Plaintiff's Memorandum in support of her appeal (and her Complaint, R. Doc. 1-2, p. 15 and submission to the Appeals Council, AR p. 26) is a one-page medical record from an April 4, 2019 visit with Dr. Munson-Whetstone, which contains Plaintiff's handwritten notes. R. Doc. 25, p. 2. This record contains Plaintiff's problem list, issues addressed, labs that were ordered and Plaintiff's vital statistics. It does not provide an opinion or diagnosis. It also does not relate to the time period for which disability benefits were denied as it is well past Plaintiff's date last insured. Because the record is not material, it does not require remand for consideration. *See, e.g.*, *Newton v. Apfel,* 209 F.3d 448, 459–60 (5th Cir. 2000) (the failure of the Appeals Council to consider newly introduced evidence by the plaintiff on appeal was not prejudicial because it consisted of opinions that postdated the claimed disability period and thus were not relevant to her ability to work during the claimed disability period).
[21] R. Doc. 25, p. 1 ("I couldn't work due to my below medical problems….they are listed below…1) hand tremors…") and *see* R. Doc. 1-2, p. 14 ("My health impairments that prevent me from working are…hand tremors….").

functional capacity ("RFC") to perform the full range of sedentary work and to the ALJ's finding that Plaintiff could perform her past relevant work.[22]

IV. LAW AND ANALYSIS

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.[23] Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance.[24] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[25] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, it must be affirmed even if there is evidence on the other side.[26] In applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try the issues

---

[22] Although not addressed in her brief, Plaintiff's typed summary of conditions attached to her Complaint addressed another issue, which Plaintiff also raised with the Appeals Council. R. Doc. 1-2, p. 14 and AR p. 25. Specifically, Plaintiff responded to the ALJ's finding that Plaintiff had no record of treatment between December 2014 and July 2016 by explaining that the reason for the gap in treatment was that Plaintiff "…didn't see a doctor from December 2014 to July 2016 = because I had no job – no money- and no health insurance…," and Plaintiff was denied Medicaid coverage. AR p. 25. Plaintiff did not raise this argument to the Court in her brief, however, it was not improper for the ALJ to consider Plaintiff's lack of treatment because there is no evidence establishing Plaintiff's lack of financial means during that time period, including documentation reflecting inability to pay or efforts to seek financial assistance for medical treatment or low cost care. *See, e.g., Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990) (ALJ not precluded from relying on lack of treatment as indication of nondisability where there was no record evidence besides the plaintiff's testimony that he would be disabled with or without medical treatment). Plaintiff's testimony and medical records also somewhat contradict this claim because she testified about receiving treatment from Earl K. Long Hospital and from Dr. Amacker with Zachary Family Practice while she lacked health insurance. AR pp. 70-72, 202 ("Dr. Amacker treated me for free $0 – because he grew up with my husband."), 215 (same); 283 (referencing Earl K. Long). However, there are no records from Earl K. Long Hospital in the administrative record, and Plaintiff did not list it as one of her medical providers on the proscribed forms so that these records could be obtained by the Commissioner. AR pp. 185-88. "The burden of proof lies with the claimant to prove disability under the first four parts of the inquiry." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). *See also* 20 C.F.R. 404.1512(a)(1) ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled (*see* § 404.1513). This duty is ongoing and requires you to disclose any additional related evidence about which you become aware."). The Commissioner obtained records from Zachary Family Practice twice but there were no records from December 2014 to July 2016. AR pp. 306-320 and AR pp. 381-387. Dr. Amacker's records attached to Plaintiff's Complaint and proffered to the ALJ also do not relate to this time period. R. Doc. 1-2, pp. 20-21 and AR pp. 42-44.
[23] *Richardson v. Perales*, 402 U.S. 389-90, 401 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (superseded by statute on other grounds, *see Stancle v. Colvin,* No. 15-00405-CAN, 2016 WL 3172784, at *8, n. 11 (E.D. Tex. June 7, 2016)).
[24] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).
[25] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001), quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).
[26] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

*de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[27]

Here, the ALJ applied the correct legal standards and substantial evidence supports his findings.

### A. Plaintiff's Hand Tremors Are Remedied by Medication and Are Not Disabling

The ALJ found that Plaintiff has severe impairments of DJD, venous insufficiency and osteoporosis.[28] In addition to these impairments, Plaintiff also identifies hand tremors as a medical problem.[29] Plaintiff did not originally report hand tremors to the Commissioner as one of her impairments or a reason for her inability to work.[30] Plaintiff later raised hand tremors in documents and medical records submitted to the ALJ, who rejected them as untimely, and to the AC, which did not exhibit the records because they would not likely change the outcome of the decision.[31] However, any error by the ALJ and/or the AC in rejecting these records was harmless because Plaintiff testified that she receives medicine for her tremors. While she dislikes taking it, Plaintiff admitted the medication resolves the hand tremors.[32] A medical condition that can reasonably be

---

[27] *Newton*, 209 F.3d at 452.
[28] AR p. 12.
[29] R. Doc. 25, p. 1; AR p. 25.
[30] *See* AR pp. 79, 86, and 182 (reporting only venous reflux disease/disorders of thrombosis and hemostasis, and DJD, dysfunction-major joints).
[31] *See* AR p. 9 (ALJ decision rejecting untimely proffered records), AR p. 25 (Plaintiff's typed summary of conditions sent to the AC), and AR pp. 30-35, 46-47 (October 4, 2018 visit with Dr. Keven Callerame and prescribing medicine for tremors) and AR pp. 43-44 (December 4, 2012 visit with Dr. Amacker visit noting Plaintiff's complaint of tremors in hands for four years). *See also* AR p. 58. Plaintiff apparently brought a record regarding her hand tremors to the hearing. The ALJ questioned Plaintiff regarding her hand tremors at the hearing, but the ALJ later declined to admit evidence that Plaintiff proffered untimely (which evidence is, presumably, the record of the Dr. Callerame visit at AR pp. 46-47, and the same record Plaintiff brought to the hearing). AR p. 9.
[32] AR p. 58. Furthermore, Plaintiff reported that she sought disability benefits in 2013 due to her hand tremors, but her claim was denied. R. Doc. 1-2, p. 14. The State agency determination also notes that Plaintiff filed a prior claim for DIB in 2012 that was denied in 2013. AR p. 76.

5

remedied either by surgery, treatment, or medication is not disabling.[33] Therefore, the ALJ did not err in find that Plaintiff's hand tremors are not disabling.

### B. Substantial Evidence Supports the ALJ's Determination that Plaintiff Can Perform the Full Range of Sedentary Work

The ALJ found that Plaintiff has the RFC to perform the full range of sedentary work,[34] which involves lifting no more than 10 pounds at a time and involves sitting, with occasional walking and standing as necessary to carry out job duties. "Occasionally" means occurring from very little up to one-third of the time.[35] "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."[36]

While Plaintiff does not specifically contest the ALJ's RFC findings, her letter brief will be liberally construed to challenge the determination that she can perform the full range of sedentary work considering her medical conditions.[37] Substantial evidence supports the determination that Plaintiff can perform sedentary work. In particular, Plaintiff reported that she could ambulate short distances and perform household chores, drive a car, as well shop in stores for food.[38] In August 2016, Plaintiff was noted as being "as active as she can possibly be,"[39] and reported being the primary caregiver for her disabled husband, who "requires complete assistance

---

[33] *Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir. 1987) (citations omitted). Plaintiff has not shown that her dislike for the medication would fall within one of the permissible reasons for failure to follow prescribed treatment under the Code of Federal Regulations. *See* 20 C.F.R. § 404.1530 (noting that failure to follow prescribed treatment without a good reason will result in a finding of no disability and listing acceptable reasons for failure to follow prescribed treatment).
[34] AR p. 12, citing 20 C.F.R. § 404.1567(a).
[35] Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983), 1983 WL 31251, *5.
[36] *Id.*
[37] R. Doc. 25, 61.
[38] AR pp. 195-96, 198 (1/5/2017 Function Report, completed by Plaintiff).
[39] AR pp. 349-50.

6

with getting in and out of a wheelchair and all of his activities of daily living ["ADLs"].[40] Plaintiff also testified that, while she is in pain: "I still have my brain. I realize I can use my brain for a job."[41] Plaintiff has not come forward with any argument as to why she cannot perform sedentary work, except to allege that some amount of walking is still required at sedentary jobs, which causes her pain.[42] However, at the hearing Plaintiff confirmed that, while she requested a walker (after her date last insured),[43] she uses it for walking long distances and does not need it to walk short distances.[44] Therefore, and as noted by the ALJ, Plaintiff testified that she could walk the short distances associated with a sedentary job.[45] Notably, Dr. Munson-Whetstone stated in an October 23, 2017 Functional Status Assessment that Plaintiff "performs normal activities of daily living

---

[40] AR p. 15, citing AR p. 349 (August 26, 2016 CVT visit).
[41] AR p. 61.
[42] AR p. 59.
[43] Plaintiff has not argued that the ALJ erred in finding that she does not meet Listing 1.02 (Major dysfunction of a joint(s) (due to any cause), which is characterized by, in pertinent part: "A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.") However, to the extent Plaintiff's letter brief could be construed as raising this argument, it fails because the evidence discussed in this section supports the ALJ's finding that Plaintiff has not shown the level of difficulty in ambulating defined by 1.00B2b ("…Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities…(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes…."). The record evidence supports the ALJ's finding that Plaintiff could walk short distances without a walker and engage in daily living activities. Plaintiff only offers her subjective statements in support of her inability to ambulate and her pain, but subjective testimony alone is insufficient to establish listing level severity at Step 3. *See Lewis v. Barnhart,* 431 F. Supp. 2d 657, 661 (E.D. Tex. 2006) (rejecting Plaintiff's subjective testimony when analyzing his inability to ambulate effectively under Listing 1.02A and holding: "Importantly for this case, a claimant may not establish Listings level severity through subjective testimony. See *Sullivan v. Zebley*, 493 U.S. [521] at 530 [(1990)], 110 S.Ct. 885.").
[44] AR p. 59 (testimony). *See* AR p. 13 and AR p. 420, where Plaintiff's provider, Dr. Vicki Munson-Whetstone, noted in a January 9, 2018 visit that Plaintiff "wants a walker with wheels to assist her in ambulating long distances, like (sic) grocery store." The only evidence of Plaintiff requesting a walker was the record of this visit, which post-dates her date last insured. As the request is, arguably, evidence of a degeneration of her condition, the ALJ was not required to consider it. *See Copenhaver v. Astrue,* No. A-09-CA-838-SS, 2011 WL 891617, at *3 (W.D. Tex. Mar. 11, 2011) (noting that, unlike properly corroborated retrospective medical diagnoses, which can constitute relevant evidence of pre-expiration disability, evidence merely showing degeneration of a condition after the date last insured is not required to be considered (citing *McLendon v. Barnhart,* 184 F. App'x 430, 431 (5th Cir. 2006) and *Likes v. Callahan,* 112 F.3d 189, 191 (5th Cir.1997)). Nevertheless, the ALJ considered Plaintiff's request for a walker, and the record supports his finding that Plaintiff has not shown that a walker is medically necessary.
[45] AR p. 59.

7

["ADLs"] without assistance," including "the following instrumental [ADLs] shopping, shopping for groceries, using public transportation, meal preparation, housework, home repair, laundry…" and that Plaintiff "is also proficient with the following bathing, dressing, eating, transferring, using toilet and walking."[46] Plaintiff was reported to "maintain[] a good energy level through daily walks," and was not found to have any fall risks. Plaintiff's "Get Up and Go Test" was one second. Plaintiff did not push to get out of a chair, did not have a wide based gait, was not unsteady or did not exhibit poor balance. Furthermore, Plaintiff was noted to maintain a positive mental well-being by "visiting family/friends." Therefore, Plaintiff's doctor's Functional Status Assessment is consistent with an RFC for sedentary work.[47]

The ALJ also gave great weight to the findings of State agency examiner Leah Holly.[48] Holly determined that Plaintiff retained the RFC to perform sedentary work with exertional limitations of both occasionally and frequently lifting and/or carrying 10 pounds; standing and/or walking for 2 hours in an 8-hour work day; and sitting for a total of 6 hours in an 8-hour workday.[49] Holly also assigned postural restrictions.[50] In weighing Holly's opinions, the ALJ considered factor (6) of 20 C.F.R. § 404.1527(c) and noted that the State agency physicians are trained health

---

[46] AR p. 398.
[47] Even though post-DLI evidence of degeneration of a condition is not relevant to prove disability during the relevant period, *see* fn 43 *above*, it is notable that the Functional Status Assessment from January 2018 contradicts Plaintiff's argument that her condition deteriorated.
[48] The evaluation rules in 20 C.F.R. § 404.1527 apply, as Plaintiff's claim was filed prior to March 27, 2017. Subsection (e) of that regulation provides that the rules of 20 C.F.R. § 404.1513a apply to consideration of evidence from federal or State agency medical or psychological consultants. *See* 20 C.F.R. § 404.1513a ("(b) Administrative law judges are responsible for reviewing the evidence and making administrative findings of fact and conclusions of law. They will consider prior administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants as follows: (1) Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.").
[49] AR pp. 15, 80. The 10 pound lifting/carrying limitation and the standing/walking and sitting limitations are all generally consistent with the sedentary RFC. *See* Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P (S.S.A. July 2, 1996), 1996 WL 374185 and the description of sedentary work listed *above*.
[50] AR pp. 15, 80.

8

professionals and are familiar with the disability determination process.[51] The ALJ also specifically considered factors (3)(supportability) and (4)(consistency) of 20 C.F.R. § 404.1527(c) and found that Holly's opinions were supported by the objective medical findings and consistent with the evidence of record, establishing Plaintiff's venous insufficiency in both legs, mild degenerative disease of both feet, and osteoporosis.[52] However, the ALJ found that Plaintiff could perform the full range of sedentary work, and rejected Holly's postural limitations,[53] based on Plaintiff's testimony and the objective medical evidence, particularly her reported activities of daily living, including being the caregiver for her disabled husband.[54]

The ALJ also found that, as a whole, the treatment records did not support Plaintiff's allegation of disabling chronic pain, as there were inconsistencies between her subjective reports and the objective medical evidence of record, including the treatment notes reflecting that Plaintiff's venous insufficiency in her left leg improved following treatment and that Plaintiff chose to not pursue surgery on her right leg, notwithstanding the positive result.[55] Further, and as

---

[51] AR p. 15 and *see* 20 C.F.R. § 404.1527(c)(6): "(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the medical opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion."
[52] AR p. 15. The ALJ found that Holly had the opportunity to review the entire medical file. *Id.*
[53] Holly assigned postural limitations of occasionally climbing ramps, stairs, ladders, ropes, and scaffolds, and occasionally balancing, stooping, kneeling, crouching and crawling. AR p. 80.
[54] AR p. 15, citing AR p. 349 (CVT visit during which Plaintiff reported being primary caregiver for her disabled husband) and AR p. 398 (Dr. Munson-Whetstone visit in which Plaintiff was found able to engage in several activities of daily living). The ALJ did not address Holly's exertional limitations. However, the finding that Plaintiff could perform the full range of sedentary work is consistent with the exertional limitations, *see above.* The objective evidence also supports the frequent lifting/carrying of 10 pound restriction, as Plaintiff stated that she is the primary caregiver for her husband, who "requires complete assistance with getting in and out of a wheelchair and all of his activities of daily living ["ADLs"]. AR p. 15, citing AR p. 349 (August 26, 2016 CVT visit).
[55] AR pp. 15, 360, 364. Plaintiff was recommended for and underwent an ablation of the left greater saphenous vein and a phlebectomy on September 21, 2016. AR pp. 346-47, 350. At her September 30, 2016 post-operative visit, Plaintiff was found to be "doing really well" and her only complaint was that she could not don her compression stockings. Plaintiff's vein surgery was successful, her ulcers were healing, and no DVT (deep vein thrombosis) was found. AR pp. 348, 352. During Plaintiff's November 3, 2016 visit with SCHS, Plaintiff reported pain on a scale of 3 out of 10, and that "[i]t's a lot better but there's still pain," which she described as dull and intermittent. AR pp. 331-32. At this visit, Plaintiff stated her intention to "get the process started to file for disability." AR p. 331. At Plaintiff's December 8, 2016 follow-up, Plaintiff reported some discomfort in her feet but she stated, "it is much better," and the

mentioned, Plaintiff was provided a walker at her request for walking long distances, and she did not require one for walking short distances.[56] Additionally, Plaintiff reported that she could walk thirty feet before needing a rest.[57] As the Fifth Circuit has noted,

> Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *See Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir. 1991). It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *See Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir. 1991); *James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986). The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence. *See Jones v. Heckler,* 702 F.2d 616, 622 (5th Cir.1983). Moreover, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling. *See Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994). Subjective complaints of pain must also be corroborated by objective medical evidence. *See Houston v. Sullivan,* 895 F.2d 1012, 1016 (5th Cir. 1989).[58]

In this case, substantial evidence supports the ALJ's RFC for the full range of sedentary work.

---

ulcer on Plaintiff's left foot was healed. No DVT was found. Venous insufficiency and an ulcer were also diagnosed on Plaintiff's right leg, but Plaintiff chose not to proceed with ablation on her right leg. AR pp. 360-61. This is the last record of treatment prior to Plaintiff's December 31, 2016 date last insured. Even after her date last insured, the objective evidence does not support Plaintiff's statement of disabling chronic pain. *See e.g.*, AR p. 405 (Jan. 9, 2018 visit noting that Plaintiff reported "0-No pain.").

[56] AR pp. 15, 59, 420. *See also*, AR p. 199 (January 5, 2017 Functional Report in which Plaintiff specifically stated she needed a walker "when walking in store."). While Plaintiff reported being a prescribed a walker and cane in 2014 (AR p. 199), there is no medical evidence of record corroborating that assertion, and it is unclear why Plaintiff would request a walker from Dr. Munson-Whetstone in 2018 if she already had one. Plaintiff has not alleged that the ALJ erred by not including a walker-related limitation in the RFC; however, even if she had, the argument would fail because Plaintiff has not sustained her burden to demonstrate the medical necessity for a walker. At most, the records acknowledge that Plaintiff requested and/or used a walker. *See Lopez v. Kijakazi,* No. 21-930, 2022 WL 4355142, at *3 (W.D. Tex. Sept. 20, 2022) ("Plaintiff bears the burden to establish that her impairments result in significant limitations to her potential RFC. *Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994). The Social Security Administration has stated that '[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device ... and describing the circumstances for which it is needed ....' *See* Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, SSR 96–9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). Plaintiff has failed to satisfy her burden to demonstrate a hand-held assistive device is medically required for her condition such that the ALJ was required to include a walker-limitation in her RFC.").

[57] AR p. 198.

[58] *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001).

## C. Substantial Evidence Supports the ALJ's Finding that Plaintiff Could Perform Her Past Relevant Work

At step 4, the ALJ found that Plaintiff can perform her past relevant work as a receptionist and administrative assistant because the performance of that work would not require work-related activities precluded by her sedentary RFC.[59] During the October 2018 hearing, VE Roberts testified[60] regarding Plaintiff's employment in the last fifteen years based upon Plaintiff's vocational history as consisting of four occupations, including receptionist, classified as sedentary and semi-skilled, and administrative assistant, classified as sedentary and skilled.[61] The ALJ found that these positions were past relevant work because they were performed within fifteen years of the date of his decision, for a sufficient length of time to learn and provide average performance, and at the level of substantial gainful activity.[62] Consistent with 20 C.F.R. § 404.1569a, the ALJ compared Plaintiff's RFC with the physical and mental demands of these two jobs, and determined that Plaintiff could perform them as actually performed based on the testimony of the VE.[63]

Specifically, in Plaintiff's January 5, 2017 work history report, she stated that, as a receptionist at her husband's welding shop, she did not walk or stand at all but rather sat for eight hours per day and typed for six hours per day.[64] Similarly, Plaintiff reported that while she worked as an administrative assistant at Georgia Pacific Corp., she walked for only one hour per day and sat for nine hours per day, typing for eight hours per day.[65] Plaintiff reported that she did not lift

---

[59] AR p. 15, citing 20 C.F.R. § 404.1565.
[60] The ALJ specifically found Roberts' testimony consistent with the DOT and accepted it. AR p. 16.
[61] AR pp. 15-16 and *see* Roberts' testimony at AR p. 62. The other two occupations, home attendant and mail carrier, were classified at a medium level of exertion which would exceed Plaintiff's RFC for sedentary work.
[62] AR p. 16, citing Plaintiff's detailed earnings query at AR pp. 163-66; the State agency disability report at AR pp. 181-90 and *see* p. 183; Plaintiff's work history report at AR pp. 206-10, and two Work Background forms completed by Plaintiff at AR pp. 255-59.
[63] AR p. 16 and *see* 20 C.F.R. § 404.1569a(a) ("When we decide whether you can do your past relevant work (see §§ 404.1520(f) and 404.1594(f)(7)), we will compare our assessment of your residual functional capacity with the demands of your past relevant work.").
[64] AR p. 209.
[65] AR p. 210.

11

or carry anything at these jobs.[66]  Plaintiff also reported that she could walk thirty feet before needing ten minutes of rest, that she finishes what she starts, that she could follow written and spoken instructions well, and that she gets along well with authority figures.[67]  Therefore, substantial evidence supports the finding that Plaintiff could perform her past relevant work as a receptionist and an administrative assistant as she performed them.  In later work background reports, submitted after the initial denial of benefits, Plaintiff changed her description of how much walking she did while performing her past relevant work. Specifically, she changed her description to state that she walked three hours while she worked as a receptionist and walked three hours while she worked as an administrative assistant.[68]  The ALJ's decision specifically cites to these reports;[69] therefore, the ALJ reviewed these statements but did not find them as credible as Plaintiff's initial descriptions of her working activities. It is the province of the ALJ to weigh the evidence, and therefore his crediting of Plaintiff's initial descriptions was not error.[70]  While Plaintiff has not specifically contested the VE's characterization of her past relevant work or the ALJ's reliance on the VE's characterization, substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work in the two referenced jobs.

V. **RECOMMENDATION**

Review of the record shows that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that under sentence four of 42 U.S.C. § 405(g), the final decision of the

---

[66] AR pp. 209-10.
[67] AR pp. 198-99.
[68] AR pp. 255, 257-58.  Plaintiff's responses were on Claimant Work Background reports which state that the last time Plaintiff's case was brought up to date was April 13, 2017.  Accordingly, these reports with Plaintiff's revised descriptions of her prior employment post-date the February 27, 2017 initial denial of benefits. AR p. 85.
[69] *See* AR p. 16 citing "13E" and "14E," in his analysis of Plaintiff's past relevant work, which includes AR pp. 255, 257-58.
[70] *See Chambliss,* 269 F.3d at 522 (the ALJ has the primary responsibility for resolving conflicts in the evidence).

Acting Commissioner of Social Security be **AFFIRMED,** and that this action be **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on January 24, 2023.

                                                   **ERIN WILDER-DOOMES**
                                                   **UNITED STATES MAGISTRATE JUDGE**